# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 21-1400V
UNPUBLISHED

| | |
|---|---|
| SHAWN WILSON-BLOUNT,<br><br>       Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>       Respondent. | Chief Special Master Corcoran<br><br>Filed: July 25, 2023 |

*Jimmy A. Zgheib, Zgheib Sayad, P.C., White Plains, NY,* for Petitioner.

*Bridget Corridon, U.S. Department of Justice, Washington, DC,* for Respondent.

**RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES**[1]

On May 26, 2021, Shawn Wilson-Blount filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her on November 20, 2020. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons described below, and after holding a brief hearing on entitlement and damages in this matter, I find that Petitioner is entitled compensation, and I award

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

damages in the amount **$120,000.00, representing Petitioner's actual pain and suffering**.

I.     **Relevant Procedural History**

As noted above, the case was initiated in May 2021. More than a year later, on December 9, 2022, Respondent filed a status report stating that he was willing to entertain settlement discussions. ECF No. 27. Thereafter, the parties attempted to informally resolve the issue of damages but reached an impasse on an appropriate award. ECF No. 31.

On March 13, 2023, Petitioner filed a Motion for Ruling on Record and Brief in support of Damages ("Motion"), arguing that she had established entitlement to compensation for her SIRVA injury and requesting $160,000.00 for actual pain and suffering. ECF No. 35.

Respondent reacted to Petitioner's Motion on April 12, 2023 ("Response") recommending that entitlement to compensation be denied under the terms of the Vaccine Act. ECF No. 36. Respondent argued that Petitioner had failed to show that she suffered a Table injury because the onset of her pain did not occur within 48 hours of vaccination and her symptoms were not limited to her left shoulder. *Id*. 12-14. Respondent also maintained that "[P]etitioner's providers expressly found against vaccination as the cause of her shoulder condition." *Id*. at 14. Assuming that entitlement is found, Respondent proposes an award of $120,000.00 in actual pain and suffering. *Id.* at 17-25.

Petitioner filed her Reply on April 7, 2023. ECF No. 37. In it, Petitioner specifically asserts that the onset of her symptoms began within 48 hours of vaccination and that she "was diagnosed and treated solely for pain and limited range of motion to her left shoulder." *Id*. at 3. Petitioner also disputes Respondent's contention that her treating providers dismissed vaccination as the cause of her injury. *Id*. at 4.

In June of this year, I proposed this case be set for an expedited "Motions Day" hearing on July 14, 2023, at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. ECF No. 38. The parties agreed, and the Motions Day hearing took place as scheduled. Minute Entry dated July 20, 2023. After the argument, I orally ruled on Petitioner's entitlement to compensation and made a damages determination as well. This Decision memorializes those findings/determinations.

## II.    Relevant Factual Evidence

- Petitioner's pre-vaccination medical history includes generalized osteoarthritis, peripheral neuropathy, cervical polyradiculopathy, bilateral carpel tunnel syndrome, abnormal kidney function, hypertension, diabetes, multiple sclerosis ("MS"), and Sjogren's syndrome ("SS"). *See*, *e.g.*, Ex. 4 at 3, 8, 14; Ex, 5 at 9, 15.

- On January 23, 2015, Petitioner presented for a follow-up appointment with her rheumatologist, Dr. Pallavi Sharma. Ex. 5 at 50-52. Her complaints included "shoulder pain off and on." *Id*. at 50. On exam, Petitioner's left shoulder was determined to be "moderately tender." *Id*. at 51. Dr. Sharma maintained Petitioner's diagnosis of SS. *Id*. at 51-52.

- Petitioner returned to Dr. Sharma on August 4, 2015. Ex. 5 at 58-60. She was diagnosed with generalized osteoarthritis. *Id*.

- Petitioner presented to her neurologist, Dr. Mary C. Taylor, on September 18, 2015 to follow up on "bilateral numbness and tingling involving the upper extremities distally." Ex. 4 at 27. Electromyographic and nerve conduction studies of Petitioner's upper extremities revealed "carpal tunnel syndrome with increased terminal latency of the right median nerve" and diffuse cervical polyradiculopathy that was greater in the right than the left. *Id*.

- Petitioner complained of bilateral elbow and shoulder pain at her January 31, 2017 rheumatology appointment. Ex. 5 at 29-31. Dr. Sharma diagnosed her with bilateral shoulder joint pain and administered a steroid injection into both shoulders. *Id*. at 30.

- On June 12, 2019, Petitioner presented to Dr. Taylor concerning MS and peripheral neuropathy. Ex. 4 at 41. Her exam was unremarkable with respect to her shoulders. *Id*.

- Petitioner presented for a follow-up rheumatology appointment on October 16, 2019. Ex. 5 at 14-16. Her complaints included shoulder pain. *Id*.

- Petitioner received the flu vaccine on November 4, 2020 at Publix Pharmacy. Ex. 2 at 4-5.  It was administered by intramuscular injection into her left arm. *Id*. at 5.

- In her affidavit, signed on March 13, 2023, Petitioner avers that approximately one week after vaccination, she called Publix Pharmacy to report persistent pain in her left shoulder "since the flu shot." Ex. 25 at 1.

3

- On November 17, 2020, Petitioner attended a follow-up rheumatology telehealth appointment with Dr. Sharma. Ex. 5 at 5-6. It was noted that Petitioner's shoulders were normal. *Id*. at 5.

- On November 24, 2020 (20 days post-vaccination), Petitioner presented to her primary care provider, Dr. Mitzi Clayton. Ex. 6 at 7-9. She reported left shoulder pain "due to [the] flu injection" that she received on November 4, 2020. *Id*. at 7. Petitioner further complained of swelling at the injection site, limited ROM, an inability to do repetitive motions with her left shoulder, and "[p]ain in the left deltoid that radiates to the left elbow." *Id*. Petitioner underwent an x-ray and was prescribed Voltaren gel. *Id*. at 8.

- Petitioner presented to orthopedic surgeon Dr. Maurice Jove on November 25, 2020. Ex. 7 at 12. His medical note reflects Petitioner's report of "pain and discomfort in her left shoulder" and further establishes that "a few weeks ago [Petitioner] ha[d] an injection/flu shot and has been having pain and issues in that shoulder since." *Id*. Dr. Jove determined that Petitioner "has subacromial pain and some deltoid pain too from where the injection was but it is all not actually related to the nerve or any specific injury." *Id*. Petitioner was administered a cortisone injection. *Id*.

- Petitioner underwent an initial physical therapy evaluation on December 3, 2020. Ex. 8 at 34-37. She reported that "she got a flu shot about a month ago and she felt like they put it a little high." *Id*. at 34. Petitioner further noted that "she has been getting pain down her L[eft] arm to about her elbow." *Id*. Petitioner rated her pain, at its worse, as a ten on a ten-point pain scale – although her current pain was rated as a six. *Id*.

- Petitioner attended 8 sessions of physical therapy between December 3, 2020 and January 13, 2021. Ex. 8 at 74-104.

- Petitioner returned to Dr. Jove on January 13, 2021 and reported that her shoulder was still bothering her and that she continued to experience weakness. Ex. 7 at 4.

- Petitioner had a follow-up rheumatology telehealth visit on February 8, 2021. Ex. 5 at 3. Her left shoulder was not discussed.

- Petitioner attended six sessions of physical therapy for her left shoulder between January 19, 2021, to February 11, 2021. Ex. 8 at 43-68. The note documenting Petitioner's February 11, 2021 session reflects that Petitioner "continue[d] to

4

gradually progress with [active range of motion] however still with significant limitations and increase in pain at end range." *Id*. at 43. Also on February 11, 2020, Petitioner rated her pain as a seven on a ten-point pain scale. *Id*. at 47.

- Petitioner returned to Dr. Jove on February 24, 2021, and reported that she continued to experience pain and discomfort in her left shoulder. Ex. 7 at 3. On exam, Petitioner exhibited weakness in her rotator cuff, significantly limited left shoulder range of motion, and no strength against abduction and forward flexion above 90 degrees. *Id*. Dr. Jove administered a second cortisone injection into Petitioner's left shoulder. *Id*.

- Petitioner underwent an MRI on March 8, 2021. Ex. 9 at 1. The clinical indication was "[l]eft shoulder pain post flu shot." *Id*. The MRI revealed full-thickness tears of the supraspinatus and infraspinatus tendons and tendinosis of the subscapularis tendon. *Id*.

- Also on March 8, 2021, Petitioner presented to Dr. Jove to discuss the results of her MRI. Ex. 7 at 2. He opined that she had a cuff tear and degenerative changes. *Id*. In an addendum to his original note, Dr. Jove noted that Petitioner had decided to proceed with surgical intervention. *Id*.

- On April 7, 2021, Petitioner returned to Dr. Jove and received her third steroid injection. Ex. 7 at 13.

- Petitioner underwent arthroscopic surgery of her left shoulder on June 4, 2021 (7 months post-vaccination). Ex. 11 at 71-72. The operative report documents left shoulder rotator cuff repair and SLAP repair. *Id*.

- Petitioner's first post-operative medical appoint occurred on July 14, 2021 with Dr. Jove. Ex. 12 at 2. In addition to noting that Petitioner would start physical therapy, he also wrote that Petitioner "is doing well. Her pain is gone. Her wound looks fine." *Id*.

- In her affidavit, Petitioner states that Dr. Jove's post operative medical notes incorrectly indicate that her shoulder pain had significantly improved. Ex. 25 at 3. She avers that such statements are "simply false" and states that she "still had significant pain in my left shoulder for several months after surgery." *Id*.

- Between July 26th and October 6, 2021, Petitioner attended 11 sessions of physical therapy. Ex.14. During her initial examination on July 26, 2021, Petitioner rated her pain, at its worse, as a ten on a ten-point pain scale. *Id*. at 48. Petitioner

5

further reported that, at best, her pain was a zero on the same scale. *Id*. She reported significant weakness, loss of range of motion and functional limitations. *Id*. at 49.

- The October 6, 2021 physical therapy note documents "significant improvements" in Petitioner's range of motion while also noting that Petitioner continued to experience pain, weakness and difficulty performing activities of daily living. Ex. 14 at 2.

- Petitioner also presented to Dr. Jove on October 6, 2021. Ex. 13 at 1. He noted that Petitioner "is doing well. Her pain is diminished. She has excellent movement and function." *Id*.

- Petitioner saw her primary care provider on December 2, 2021. Ex. 15 at 8. The notes documenting this visit reflect Petitioner's report of left shoulder pain. *Id.* She was prescribed Voltaren gel. *Id*.

- On December 8, 2021, Petitioner returned to Dr. Jove for a follow-up appointment. Ex. 16 at 4. He noted that Petitioner "was doing better," had no pain or complaints and that "her shoulder has full range of motion." *Id*.

- Petitioner again saw Dr. Jove on March 16, 2022. Ex. 17 at 5. He again documented that Petitioner was doing great and had no complaints. *Id*. The record reflects that Petitioner exhibited full range of motion and that her arm was fully functional. *Id*.

- Petitioner presented to Dr. Clayton for a physical exam on May 3, 2022. Ex. 23 at 6-10. The medical note documenting this appointment indicates that Petitioner's musculoskeletal exam was normal. *Id*. at 7. There is no indication that her left shoulder was discussed.

- In her affidavit, Petitioner states that she received care from Dr. Jove on May 11, 2022 "for the persistent severe pain in my left shoulder" and was given a cortisone injection. Ex. 25 at 2.

- A May 11, 2022 medical note from Dr. Jove's office indicates that his "[d]ictation system failed [and] no dictation [is] available." Ex. 19 at 7.

- On March 13, 2022, Brian Pallone, the Practice Manager at Dr. Jove's medical practice, authored two letters. Ex. 26 at 2-3. In the first letter, Mr. Pallone wrote that "[d]uring the course of business, dictation for office visits sometimes is unable

to be located in the transcription system. When we are made aware of this . . . a note is placed in the chart that the dictation system failed." *Id*. at 2. In his second letter, Mr. Pallone stated that on May 11, 2022, Petitioner "was seen in our office and received an injection in the left shoulder." *Id*. at 3.

- On May 24, 2022 (almost nineteen months post-vaccination), Petitioner underwent an initial physical therapy examination for "new onset L[eft] shoulder pain." Ex. 18 at 28-30. She rated her current pain as a two on a ten-point scale. *Id*. at 28. At worst, she reported a pain level of eight. *Id*. The note documenting this assessment indicates that Petitioner "had to end therapy early 2/2 to insurance. [Petitioner] has been noticing cont[inued] weakness and pain in the L[eft] shoulder." *Id*.

- Between May 24 and July 20, 2022, Petitioner attended 12 sessions of physical therapy. Ex. 18.

- During her July 18, 2022 physical therapy session, Petitioner reported that she'd had a "near fall," but "caught herself on the bathroom counter with her left shoulder and her left knee hit the ground." Ex. 18 at 56. The note documenting this visit indicates that Petitioner's strength and mobility had "significantly improved." *Id*. at 57.

- Petitioner returned to Dr. Jove on July 20, 2022. Ex. 19 at 6. The medical note reflects that Petitioner was "doing better" and that her pain had lessened. *Id*.

- On August 23, 2022, Petitioner rated her pain as a six on a ten-point pain scale. Ex. 20 at 20.

- Petitioner attended three sessions of physical therapy between August 17 and September 6, 2022. Ex. 20 at 10-22.

- Petitioner was discharged from physical therapy on September 28, 2022. Ex. 27 at 43-45. The summary indicates that Petitioner "achieved functional [range of motion] and strength . . . also [demonstrates] ability to lift 10 [pounds] overhead for functional ADLs." *Id*. at 45.

- Petitioner presented to Dr. Jove on September 28, 2022. Ex. 21 at 7. His medical note reflects that Petitioner was "doing very well," had full range of motion, and was cleared from therapy. *Id*.

- Petitioner again presented to Dr. Jove on October 21, 2022. Ex. 22 at 9. He noted that Petitioner was "really doing well with her shoulder" and that her "only issue is

7

sensitivity around the anterior incision" that bothered her upon touch to the skin. *Id*.

- Almost six months after her pervious presentation to Dr. Jove, on April 12, 2023, Petitioner again consulted with her orthopedist. Ex. 27 at 9. The medical notes reflect that Petitioner "has started to become more active . . . and now her shoulder is bothering her at the extremes of abduction and external rotation and also when she reaches behind her." *Id*. Dr. Jove recommended that she resume physical therapy. *Id*.

- On April 19, 2023, Petitioner presented to physical therapy for an initial examination. Ex. 28 at 34. The examination notes reflect that she "return[ed] . . . secondary to pain and discomfort in her L[eft] shoulder . . . [and] reports that she can't recall injuring her shoulder. However, she reports assisting relatives with lifting large items earlier this year greater than 50#." *Id.*

- Between April 12 and June 14, 2023, Petitioner attended eight sessions of physical therapy. Ex. 28. At her June 14, 2023 appointment, she rated her pain as a four on a ten-point scale. *Id*. at 76.

- Petitioner's next orthopedic appointment took place on May 10, 2023. Ex. 27 at 8. The medical note indicates that although Petitioner was "doing better," and had regained her range of motion, she still suffered from deficiencies in strength. *Id*.

- Petitioner presented to Dr. Jove on June 28, 2023 and reported "some issues around her biceps anchor." Ex. 27 at 78. Dr. Jove opined that Petitioner's symptoms were due to "overdoing her weights and strengthening." *Id*. Petitioner was administered a cortisone injection. *Id*.

### III.    Authority

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special

master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

>  (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
>  (ii) Pain occurs within the specified time frame;
>
>  (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
>  (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

## IV. Factual Findings and Ruling on Entitlement

### A. Factual Findings Regarding QAI Criteria for Table SIRVA

After a review of the entire record, I find that Petitioner has preponderantly satisfied the QAI requirements for a Table SIRVA. The medical records and affidavits filed in this case are hereby incorporated by reference.

#### 1. Prior Condition

The first QAI requirement for a Table SIRVA is lack of a history revealing problems associated with the affected shoulder which were experienced prior to vaccination and would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i).

Petitioner's pre-vaccination medical history includes (but is certainly not limited to) generalized osteoarthritis, peripheral neuropathy, cervical polyradiculopathy, MS, and SS. However, Respondent has not argued – and the medical records do not reflect – that any of Petitioner's pre-vaccination diagnoses completely explain the full constellation of her post-vaccination symptoms specific to a SIRVA. Accordingly, I find that Petitioner has met this first criterion to establish a Table SIRVA.

#### 2. Onset of Pain

A petitioner alleging a SIRVA claim must also show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that

her pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)).

The evidence collectively establishes that Petitioner's shoulder pain most likely began within 48 hours of receiving the November 4, 2020 flu vaccine. Admittedly, her medical records fail to reflect a precise date of onset, and include vague references to the start of Petitioner's pain (*e.g.*, "pain and issues . . . *since*" the flu shot. (emphasis added)). However, Petitioner consistently reported her shoulder pain and related it to the vaccination. Indeed, at her November 24, 2020 presentation to her primary care provider (only 20 days after vaccination), Petitioner complained of "[s]houlder pain . . . due to flu injection." Ex. 6 at 7. *See also* Ex. 7 at 12 (November 25, 2020 orthopedic note stating that Petitioner "ha[d] an injection/flu shot and has been having pain and issues in that shoulder ever since.").

Respondent accurately notes an intervening rheumatology appointment (occurring only 13 days post-vaccination), at which time Petitioner made no mention of her shoulder injury or its purported onset. Ex. 5 at 5-6. This omission is compounded by evidence that this same provider previously treated Petitioner's bilateral pain – even administering a cortisone injection. Ex. 5 at 29-31. However, a single intervening medical encounter is not enough to *disprove* onset, especially given that Petitioner's rheumatology appointment was for a specialized purpose, she reported her symptoms to a general practitioner only one-week later, and Petitioner's assertions about a close-in-time onset were consistent at all *subsequent* medical encounters.

Accordingly, I find there is preponderant evidence to establish that the onset Petitioner's left shoulder pain occurred within 48 hours of the November 4, 2020 flu vaccination.

### 3. Scope of Pain and Limited ROM

The third QAI requirement for a Table SIRVA requires a petitioner's pain and reduced range of motion to be "limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii). Respondent argues that Petitioner has not met this criterion because she reported pain that radiated to her elbow. Response at 14. But this fact does not defeat Petitioner's otherwise-preponderant showing.

It is true that Petitioner described radiating symptoms during her first medical and physical therapy appointments. However, these records also reveal that Petitioner's symptoms originated from her left shoulder, and that this locus was her primary concern. *See, e.g.*, Ex. 6 at 7 (November 24, 2020 medical note indicating that the reason for Petitioner's appointment was "[s]houlder pain left" while incidentally noting that

Petitioner's pain "radiates to the left elbow."). Moreover, no records indicate pain radiating *upward* from her elbow. Ex. 8 at 34 (December 3, 2020 physical therapy note documenting Petitioner's complaint of "pain down her [left] arm to about elbow."). And Petitioner's post-vaccination treatment focused on her shoulder symptoms – not on her elbow. I also note that it is not uncommon for petitioners to experience pain that originates in their shoulders but radiates down their arms – something that does not *per se* disqualify a SIRVA claim, absent evidence that the primary concern is radiating pain.

Accordingly, preponderant evidence establishes that Petitioner's pain was sufficiently "limited" to her left shoulder for a favorable ruling on this SIRVA element.

### 4. Other Condition or Abnormality and Provider Opinion

The last QAI criteria for a Table SIRVA states that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent argues that "[P]etitioner has known diagnoses concerning joint pain and documented degeneration in her medical record that could explain her usual presentation for an alleged SIRVA." Response at 15.

It is undisputed that Petitioner had an extensive pre-vaccination medication history and that she complained of bilateral shoulder pain to her rheumatologist on January 31, 2017 and on October 16, 2019. Ex. 5 at 14-16; 29-31. However, after October 2019, Petitioner did not report any issues with her left shoulder until November 24, 2020 – more than a year later. Further, there is nothing in Petitioner's clinical history that indicates that any of her pre-vaccination diagnoses wholly explain her post-vaccination symptoms independent of vaccination.

Respondent also argues that "[P]etitioner's providers expressly found against vaccination as the cause of her shoulder condition." *Id*. at 14. Specifically, Respondent asserts that while Dr. Joven acknowledged Petitioner's subacromial and deltoid pain "from where the injection was," he opined that "it is *all* not actually related to the nerve or any specific injury." (emphasis added). Ex. 7 at 12. But I do not conclude from this statement that Dr. Jove ruled out vaccination as the source of *any* of Petitioner's pain (and at worst it simply means that some of Petitioner's issues stemmed from her acknowledged comorbidities).[4]

---

[4] Respondent also argues that because the radiologist who interpreted Petitioner's March 8, 2021 MRI found that there were "[n]o findings of inflammation/myositis/neuropathy related to vaccination," he necessarily concluded that Petitioner's injury was not related to vaccination. Response at 14. However, I do not deem the radiologic opinion to be entitled to the same weight as other treaters in this case, who would have greater responsibility for making a diagnosis. And by this time, Petitioner was otherwise experiencing SIRVA-like symptoms, and continued to do so thereafter, further diminishing the evidentiary value of this finding.

Therefore, based on all of the above, I find preponderant evidence establishing that there is no other condition or abnormality which would explain the symptoms of Petitioner's left shoulder injury.

### B. Other Requirements for Entitlement

Even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), *i.e.*, receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed.

Thus, based upon all of the above, Petitioner has established that she suffered a Table SIRVA, satisfying all other requirements for compensation.

## V. Damages

### A. The Parties' Arguments

Citing three prior damages determinations, Petitioner requests $160,000.00 in pain and suffering. Motion at 1. She asserts that her course of treatment (which, as of July 14, 2023, was alleged to include one MRI, five steroid injections, 49 sessions of physical therapy, and arthroscopic surgery) is comparable to the aforementioned SIRVA cases and warrants an award at that level. Motion at 13-16. Petitioner also emphasizes that she first sought treatment only 20 days after vaccination, endured significant pain and suffering, and that the duration of her injury is "over 28 months." *Id*. at 15-16. Indeed, during the Motions Day hearing, her counsel argued that Petitioner continues to suffer from her SIRVA injury to the present day.

Respondent, by contrast, proposes an award of no more than $120,000.00 for Petitioner's pain and suffering. Response at 2. During the hearing, Respondent's counsel argued that Petitioner's clinical course for her SIRVA injury only included 25 sessions of physical therapy (not 49) and three steroid injections (not five). Additionally, Respondent argues that the duration of Petitioner's injury is only thirteen months and that, in general, Petitioner rated her pain as a six on a ten-point pain scale. Response at 20-21. Noting that Petitioner's June 2021 surgery also included the repair of a SLAP tear, Respondent argues that "[P]etitioner's presentation and treatment was not due to her vaccine injury alone." *Id*. at 22. Respondent cites to five cases in particular – *Rector, Kelley, Collado,*

13

*Dobbins*, and *Curri* – in which petitioners received between $120,000.00 and $125,000.00 for pain and suffering.[5]

### B. Legal Standards for Damages Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Knasel v. Sec'y of Health & Hum. Servs.,* No. 20-1366V, 2023 WL 2547961, at *1-4 (Fed. Cl. Mar. 17, 2023).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs*., No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. [6]

### C. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the same record relied upon to determine entitlement, including the filed affidavit and medical records, written briefs, and argument at the July 14th Motions Day hearing. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience

---

[5] *Rector v. Sec'y of Health & Human Servs*., No. 17-1767V, 2020 WL 4692449 (Fed. Cl. Spec. Mstr. July 13, 2020)($120,00 in pain and suffering); *Kelly v. Sec'y of Health & Human Servs.,* No. 17-2054, 2019 WL 5555648 (Fed. Cl. Spec. Mstr. Aug. 2, 2019) ($120,000 in pain and suffering); *Collado v. Sec'y of Health & Human Servs.*, No. 17-0225V, 2018 WL 3433352 (Fed. Cl. June 6, 2018)($120,000 for pain and suffering); *Dobbins v. Sec'y of Health & Human Servs*., No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Aug. 15, 2018) ($125,00); *Curri v. Sec'y of Health & Human Servs.,* No. 17-0432, 2018 WL 6273562 (Fed. Cl. Oct. 31, 2018)($125,000 for pain and suffering).

[6] *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

adjudicating these cases.[7]

A careful review of the evidence reflects that after her November 4, 2020 flu vaccination, Petitioner suffered a moderate injury for approximately thirteen months. Her subsequent condition was less significant, and harder to attribute to vaccination.

It is not disputed that Petitioner sought medical care on November 24, 2020 – only twenty days after vaccination – and underwent one MRI, received three cortisone injections, and participated in fourteen sessions of physical therapy prior to undergoing arthroscopic surgery (which included the repair of Petitioner's rotator cuff and SLAP tears – injuries that could not be deemed the consequence of the SIRVA itself) on June 4, 2021. Ex. 6 at 7-9; Ex. 7 at 3, 12-13; Ex. 8 at 43-68; 74-104; Ex. 11 at 71-72. In the seven months following vaccination, Petitioner rated her pain on two occasions: First, on December 3, 2020 (assigning a value of "six") and then on February 11, 2021 (assigning a value of "seven"). Ex. 8 at 34, 47.

Between July 26 and October 6, 2021, Petitioner attended eleven post-operative sessions of physical therapy. Although the October 6, 2021 physical therapy note documents "significant improvements," Petitioner continued to experience pain, weakness and difficulty performing activities of daily life. Ex. 14 at 2. Moreover, on December 2, 2021, Petitioner informed her primary care physician that she continued to experience left shoulder pain. Ex. 15 at 8. However, on December 8, 2021 (approximately thirteen months post-vaccination), Dr. Jove noted that Petitioner was "doing better," had no complaints, and that her shoulder had full range of motion. Ex. 16 at 4. Indeed, on March 16, 2022, Petitioner again had no complaints, full range of motion, and full function. Ex. 17 at 5. And Petitioner's May 3, 2022 musculoskeletal exam was normal. Ex. 23 at 6-10. But on May 24, 2022 (more than five months after Dr. Jove noted that Petitioner had no pain or complaints), Petitioner presented to physical therapy with "*new* onset [of left] shoulder pain." Ex. 18 at 18, 28 (emphasis added).

Respondent contents that treatment Petitioner received after December 2022 (which included two cortisone injections and twenty-four additional sessions of physical therapy – the last occurring on June 14, 2023) cannot be attributed to Petitioner's shoulder injury, and that the duration of Petitioner's SIRVA injury is therefore thirteen months (calculated from November 4, 2020 through December 8, 2021).

In response, Petitioner maintains that she had not recovered from her shoulder injury within thirteen months, and that the cessation of physical therapy between October 2021 and May 2022 was due to limitations of her health insurance. Reply at 5. And, in

---

[7] My summary of facts, as set forth in Section II herein, is fully incorporated and relied upon in my decision awarding damages.

addition to asserting that she returned to Dr. Jove on May 11, 2022 regarding ongoing shoulder pain, at her May 24, 2022 physical therapy initial exam, "she reported that since her last bout of therapy in October 2021, she had continued with weakness and pain" and "did not report any new injury to her left shoulder." *Id*. at 5-6.

Despite her assertions to the contrary, I find that Petitioner had substantially recovered from her shoulder injury at the time of her December 2021 orthopedic appointment, notwithstanding residual issues that required some follow-up and treatment. Any lingering symptoms beyond early 2022 are thus more likely due to pre-existing comorbidities and intervening factors (such as Petitioner's "near" fall in July 2022).

I commend both parties for citing to past reasoned opinions to inform the present analysis of an appropriate award for pain and suffering. However, Petitioner's comparable cases involve awards too high to fit the circumstances of this case, since those claimants generally appear to have suffered more serious courses of SIRVA. Respondent's cited cases, by contrast, represent more useful comparative circumstances (despite some individual distinctions), involving petitioners who, as here, suffered moderate-to-severe pain for about a year and required surgery. As previously noted, the awards in such cases ranged from between $120,000.00 and $125,000.00.

Thus, taking all of the above into account, I award Petitioner $120,000.00 for pain and suffering.

## Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $120,000.00, representing compensation for actual pain and suffering.**

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[8]

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.